UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TEDDY G. THOMAS, III., | : | Case No. 1:25-cv-14 |
| Plaintiff, | : | |
| vs. | : | District Judge Jeffery P. Hopkins |
| | : | Magistrate Judge Elizabeth P. Deavers |
| C/O J. LEWIS, et al., | : | |
| Defendants. | : | |

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff, a prisoner at the Southern Ohio Correctional Facility, has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983.

By separate Order plaintiff has been granted leave to proceed *in forma pauperis*. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

**Screening of Plaintiff's Complaint**

**A. Legal Standard**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous,

malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(1) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

---

[1] Formerly 28 U.S.C. § 1915(d).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**B. Allegations in the Complaint**

Plaintiff alleges that on March 17, 2024 he was stopped at a metal detector on the way to eat dinner. (Doc. 1-7, Complaint at PageID 91). According to plaintiff, he was using crutches at the time due to having a broken foot and torn Achilles tendon. Plaintiff alleges that he placed his crutches down on a table and showed his inmate ID to the correctional officers present—including

3

defendants J. Lewis and Murray—before hopping through the metal detector. Plaintiff claims that Lewis laughed at him and again asked plaintiff for his ID. After showing Lewis the ID, plaintiff claims he placed it back in his shirt pocket and retrieved his crutches. Plaintiff alleges that Lewis smirked and stated "all inmates are to have their IDs out at all times." Plaintiff retrieved his ID and carried it while using the crutches, which allegedly prompted Lewis to state "see, the gimp can carry his ID and use his crutches at the same time." (*Id.* at PageID 93). According to plaintiff, he requested Lewis's name before Lewis stated "I don't care that you write me up – make sure you spell my name right" and "hobble your ass to the chow hall, you cocksucker." (*Id.*).

After a brief argument, plaintiff claims that Lewis cut him off, forced him against the wall, and placed his left wrist into handcuffs. Plaintiff alleges that he informed Lewis that he could not walk without his crutches, to which Lewis stated "Don't worry, I'll help you walk." (*Id.* at PageID 94). According to plaintiff, after being handcuffed by Lewis and Murray, Lewis "aggressively yank[ed] him away from his crutches" and forced plaintiff to hop while kneeing plaintiff's injured leg. (*Id.*). When plaintiff protested, Lewis allegedly began to twist plaintiff's left wrist to the point that plaintiff claims "felt like Lewis was trying to break plaintiff's wrist." (*Id.*). Plaintiff further alleges that Lewis continued to knee his left leg, causing his injured foot to twist at the ankle and resulting in great pain. Plaintiff claims that Murray observed the incident and ignored his cries for help. (*Id.* at PageID 95).

Plaintiff claims that an "SRT Member" eventually observed them and ordered Lewis to place plaintiff in a wheelchair. Plaintiff further claims that Murray retrieved a wheelchair, but that he purposefully rammed it into plaintiff's legs, resulting in the leg rest striking his broken foot and causing intense pain. According to plaintiff, Lewis wheeled plaintiff to a strip-out cage and he was strip searched for no legitimate reason. (*Id.* at PageID 96). In an attached grievance

4

concerning the search, plaintiff alleges that Lewis's goal in conducting the search was to humiliate, harass, and retaliate against him. (*See* Doc. 1-3 at PageID 51).

Upon being released, plaintiff claims that defendant Captain Haywood accused plaintiff of running his mouth. (Doc. 1-7 at PageID 96). Plaintiff claims he explained what happened, but that Haywood placed him into restrictive housing, purportedly for a pending a use-of-force investigation. However, plaintiff claims that no use of force investigation took place, and that he remained in a filthy cell, was deprived dinner, and did not receive pain medication or medical attention for three days. Plaintiff claims Lewis wrote a false conduct report against him in connection with the incident and that he was improperly found guilty of a rule infraction violation. He seeks to hold defendants Warden Cynthia Davis, Sgt. A. Cooper, Lt. B. Barney, and V. Brown liable based on the false conduct report, guilty finding and/or appeal. (*Id.* at PageID 98).

Based on the above factual allegations, plaintiff asserts various state and federal claims against defendants. (*See id.* at PageID 91, 97-98). As relief, plaintiff seeks monetary damages and injunctive relief. (*Id.* at PageID 92).

**C. Analysis.**

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with his First, Fourth, and Eighth Amendment claims against defendants Lewis and Murray in their individual capacities, based on his allegations that these defendants retaliated against him, subjected him to a strip search for no penological purpose, and used excessive force against him. Plaintiff may also proceed at this juncture with his Eighth Amendment claim against defendant Haywood, based on his allegation that Haywood deprived him of pain medication and medical attention for three days following the

incident. Plaintiff's claims against these defendants are deserving of further development and may proceed at this juncture.

The Court has not yet determined whether it will exercise supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367. Out of an abundance of caution, and in light of plaintiff's *pro se* status, the Court will not *sua sponte* dismiss plaintiff's state-law claims against defendants Lewis, Murray, and Haywood at this juncture.[2] The Court will determine at a later stage in the proceedings whether the exercise of supplemental jurisdiction over the state-law claims is appropriate.

Plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

As an initial matter, plaintiff fails to state a viable due process claim under the Fourteenth Amendment in connection with the RIB hearing, because the challenged disciplinary actions did not amount to a deprivation of a constitutionally protected liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to

---

[2] Plaintiff asserts state-law claims of civil assault, battery, negligence, intentional infliction of emotional distress, and defamation, amongst other claims, against defendants Lewis, Murray, and Haywood in the complaint. (*See* Doc. 1-7, Complaint at PageID 91).

6

an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, plaintiff has not alleged that the challenged disciplinary proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Moreover, plaintiff has not alleged any facts to suggest that he was subjected to a lengthy disciplinary placement amounting to an atypical or significant hardship that would trigger constitutional concerns. Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, any claim against defendants Warden Cynthia Davis, Sgt. A. Cooper, Lt. B. Barney, and V. Brown for their conduct in the disciplinary proceedings fails to state a cognizable federal claim under the Fourteenth Amendment's Due Process Clause.[3]

---

[3] The complaint should also be dismissed to the extent that plaintiff seeks to hold any defendant liable in connection with the grievance process or investigation of his claims. (*See* Doc. 1-1, Complaint at PageID 98). "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). Furthermore, to the extent that plaintiff claims that the grievance procedure failed to produce the correct outcome, this cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally

Plaintiff has also not stated a constitutional claim to the extent he has alleged that Haywood falsely accused plaintiff of "running his mouth" or that Lewis wrote the false conduct report which resulted in disciplinary sanctions imposed by the RIB. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, as noted above, plaintiff's allegations are insufficient to trigger constitutional concerns because he has not alleged any facts even remotely suggesting that the challenged disciplinary action deprived him of a protected liberty interest.

Plaintiff's equal protection claims should also be dismissed. Plaintiff asserts that all defendants deprived him of equal protection of the law. (*See* Doc. 1-7, Complaint at PageID 91, 97). However, plaintiff has failed to plausibly set forth an actionable equal protection claim. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of*

---

protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug.03, 1998) (citations omitted). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

*Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). To state a claim for discrimination under the equal protection clause, plaintiff must allege sufficient facts to show that a state actor intentionally discriminated against him because of his membership in a protected class. *Simpson v. Ameji*, 57 F. App'x 238, 239 (6th Cir. 2003) (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). In this case, plaintiff has failed to allege any facts to plausibly suggest that defendants treated plaintiff differently or denied him any rights because of his membership in a protected class.

Accordingly, in sum, plaintiff may proceed with his First, Fourth, and Eighth Amendment claims against defendants Lewis and Murray, as well as his Eighth Amendment claim against defendant Haywood. At this juncture in the proceedings, the Court will not *sua sponte* dismiss plaintiff's state-law claims against defendants Lewis, Murray, and Haywood. Having found that the remaining claims alleged in the complaint—including those against the remaining defendants, Lt. B Barney, Sgt. A. Cooper, Warden Cynthia Davis, and V. Brown—fail to state a claim upon which relief may be granted, plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## IT IS THEREFORE RECOMMENDED THAT:

1. The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), with the exception of plaintiff's First, Fourth, and Eighth Amendment claims against defendants Lewis and Murray and his Eighth Amendment, deliberate indifference claim against defendant Haywood. At this juncture in the proceedings, plaintiff may also proceed with his state law claims against defendants Lewis, Murray, and Haywood.

9

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

## IT IS THEREFORE ORDERED THAT:

1. The United States Marshal shall serve a copy of the complaint, summons, the Order granting plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendants Lewis, Murray, and Haywood, with costs of service to be advanced by the United States.

2. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

Date:  March 20, 2025                              s/ *Elizabeth A. Preston Deavers*
                                                   Elizabeth A. Preston Deavers
                                                   United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).